IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| SYLVIA MUNIZ, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | EP-09-CV-274-KC |
| | § | |
| EL PASO MARRIOTT, *et al.*, | § | |
| | § | |
| Defendants. | § | |

**ORDER**

On this day, the Court considered Defendant Mike Saldana's Motion to Dismiss ("Saldana Mot.") (Doc. No. 5) and Plaintiff Sylvia Muniz's Motion to Remand ("Pl.'s Mot.") (Doc. No. 6). For the reasons set forth herein, Saldana's Motion to Dismiss is **GRANTED** and Muniz's Motion to Remand is **DENIED**.

**I.   BACKGROUND**

Muniz is a resident of El Paso, Texas. Not. of Removal ¶ 3. Saldana is also a resident of Texas and was Muniz's work supervisor. *Id.* ¶ 5. Defendant Columbia Sussex Corporation ("Columbia Sussex") is a Kentucky corporation which does business in El Paso as the El Paso Marriott hotel; it is also allegedly Muniz's employer. Pl.'s Original Pet. 2.[1] Marriott Hotel Services, Inc., ("Marriott Services") is a Delaware corporation allegedly doing business in El

---

[1]   A copy of Plaintiff's Original Petition was filed with the Court as part of the Notice of Removal, but it was not marked as a separate exhibit. *See* Not. of Removal 10. Page references will be to the Petition's internal pagination.

Paso; Marriott International, Inc., ("Marriott Int'l") is also Delaware corporation allegedly doing business in El Paso (the three corporations will be referred to collectively as the "Corporate Defendants"). *Id.* at 1–2.[2] Muniz started work at the El Paso Marriott in 1997. *Id.* at 2. Starting on December 1, 2007, Saldana allegedly engaged in various lewd acts amounting to sexual harassment, sex discrimination, retaliation and intentional infliction of emotional distress ("IIED"). *Id.* at 3–5. There is no indication that Muniz left or lost her job; thus, lost wages and back pay are not at issue here, however Muniz alleges that mental and physical damages as a result of these acts. *Id.* at 5–6.

Muniz filed suit in state court on June 22, 2009, asserting claims for compensatory and punitive damages against the Corporate Defendants under state statutory anti-discrimination laws, TEX. LAB. CODE §§ 21.051, 21.055, 21.056 and 21.106, and under a common law theory of negligent training and supervision. Original Pet. 1, 3–5. She also asserts a claim against Saldana under a common law theory of IIED. *Id.* at 4. The Corporate Defendants removed the case to

---

[2] There is some confusion regarding the exact corporate and trade names, and the various roles, associated with the businesses in the instant case. As best can be determined from the filings before the Court, Columbia Sussex does business in this region under the trade name "El Paso Marriott." *See* Pl.'s Original Pet. 2. It would appear that this is the company which directly owns and runs the local hotel facility, while the other corporate Defendants run the overall Marriott Hotel chain and franchise system. *See id.* While Defendants have admitted to Columbia Sussex's role in the enterprise, they generally deny that the other corporate entities have any connection to this matter; taken together with a paucity of detail alleged by the Plaintiff, it is difficult to assess the role of each corporation at this point. *See* Corp. Defs.' Original Answer, found at Not. of Removal 53. It should also be noted that the principle place of business for each corporate entity is not stated by either party; these locations are therefore assumed to be irrelevant for present purposes. *See* Not. of Removal 1–2; *see also* Original Pet. 2.

this Court on July 24, 2009, claiming that Saldana was improperly joined as a party, on a theory that recovery against him was impossible on the grounds asserted in the suit, and that without him diversity jurisdiction properly exists. Not. of Removal 1–3. Saldana filed a motion to dismiss on August 11, 2009, repeating many of the arguments as to why the claim against him is groundless. *See* Saldana Mot. 4–6. Muniz filed a cross-motion to remand the case to state court, arguing that the claim against Saldana was viable – making him properly joined and defeating complete diversity – and that the amount in controversy for diversity jurisdiction was not met. Pl.'s Mot. 2–4. The Corporate Defendants responded to Muniz's Motion on September 1, 2009, and there have been no further filings in this matter. Corp. Defs.' Resp. (Doc. No. 7).

## II. DISCUSSION

This Order will address Saldana's Motion to Dismiss and Muniz's Motion to Remand together, because they are premised on essentially the same factual claims and legal theories. Resolving one necessarily resolves the other.

### A. Standards

The arguments here all surround the proper interpretation and application of several doctrines that relate to the Court's diversity jurisdiction. A federal district court has subject matter jurisdiction over a controversy sounding exclusively in state law when there is complete diversity of citizenship between each plaintiff and each defendant, and the amount in controversy is greater than $75,000. *See* 28 U.S.C. § 1332(a). The doctrines related to this diversity jurisdiction which are implicated in this case include those surrounding removal, remand and improper joinder.

### 1. Removal and Remand

A defendant may remove an action from state court to federal court if the action is one over which the federal court possesses subject matter jurisdiction. *See* 28 U.S.C. § 1441(a). The removing party must show that federal jurisdiction exists and that removal is proper. *See Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002). In evaluating jurisdiction, "any ambiguities are construed against removal because the removal statute should be strictly construed in favor of remand." *Id.* The district court is required to remand a case to state court if, at any time before final judgment, it determines that it lacks subject matter jurisdiction over the case. 28 U.S.C. § 1447(c). Where the jurisdiction of the court is challenged, the burden is on the party seeking to preserve the district court's removal jurisdiction. *Frank v. Bear Stearns & Co.*, 128 F.3d 919, 921-22 (5th Cir. 1997); *Sid Richardson Carbon & Gasoline Co. v. Interenergy Res., Ltd.*, 99 F.3d 746, 751 (5th Cir. 1996).

### 2. Improper Joinder

"Improper joinder" or "fraudulent joinder" refers to a situation in which the plaintiff attempts to defeat diversity jurisdiction by naming, as a co-defendant, a party of non-diverse citizenship who should not actually be named in the suit. *Smallwood v. Illinois Cent. R.R. Co.*, 385 F.3d 568 (5th Cir. 2004). To establish improper joinder, the removing party must prove either: (1) actual fraud in the pleading of jurisdictional facts; or (2) that there is no possibility that the plaintiff could establish a cause of action against the in-state defendant. *Boone v. Citigroup, Inc.*, 416 F.3d 382, 389 (5th Cir. 2005); *Hart v. Bayer Corp.*, 199 F.3d 239, 246-47 (5th Cir. 2000); *Rodriguez v. Sabatino*, 120 F.3d 589, 591 (5th Cir. 1997); *see also B., Inc. v. Miller Brewing Co.*, 663 F.2d 545, 549 (5th Cir. 1981) (noting that the burden of proving fraudulent

joinder is on the removing party).

Under the second method of proving improper joinder, the defendant must demonstrate that there is no reasonable basis for a district court to predict that the plaintiff might recover. Indeed, "[t]he burden of persuasion placed upon those who cry 'fraudulent joinder' is . . . a heavy one." *B., Inc.*, 663 F.2d at 549. But that burden is not an impossible one, as "[a] 'mere theoretical possibility of recovery under local law' will not preclude a finding of improper joinder." *Smallwood*, 385 F.3d at 573 (internal citations omitted). The task of a district court is not to determine, at this early stage, whether a plaintiff will actually or will probably prevail on the merits of the claim. *Rodriguez*, 120 F.3d at 591. Rather, the court looks only for a *possibility* that the plaintiff may prevail. *Id.* While this is analysis is generally similar to that undertaken in a Rule 12(b)(6) motion, in that the court usually does not need to look beyond the pleadings to decide the matter, a court may "pierce the pleadings" in appropriate cases and conduct a summary-judgment-like inquiry to settle the question. *Smallwood*, 385 F.3d at 573. Finally, a finding of improper joinder warrants both the denial of any motion to remand the suit to state court, as well as the dismissal of the improperly joined defendant from the action. *Griggs v. State Farm Lloyds*, 181 F.3d 694, 698 (5th Cir. 1999).

### B. Defendant Saldana Was Improperly Joined

The Corporate Defendants argue that Saldana was improperly joined in this suit, and that without him there is complete diversity. Not. of Removal 3–5; *see also* Corp. Defs.' Resp. 2–5. Saldana recycles the analysis put forward by the Corporate Defendants in support of their improper joinder argument to support his own motion to dismiss the claim against him. Saldana Mot. 2–4. Both invoke the second form of improper joinder, and argue that there is no reasonable

basis to assume that Muniz's IIED claim against Saldana will succeed under Texas common law. *See Boone*, 416 F.3d at 389. Muniz responds that Texas recognizes IIED at common law, and that Saldana's conduct at least possibly fits within the coverage of that tort. Pl.'s Mot. ¶¶ 5, 7, 9; *see also Twyman v. Twyman*, 855 S.W.2d 619, 620 (Tex. 1993) (recognizing the tort of IIED). Muniz contends that this would undercut the improper joinder argument and support remand. Pl.'s Mot. ¶ 4.

Under Texas law, a claim for IIED is not available against an employee's supervisor if the same alleged conduct supports a claim for relief against the employer under other legal theories, such as the anti-discrimination statutes. *See Creditwatch v. Jackson*, 157 S.W.3d 814, 816 (Tex. 2005) ("As her complaints are covered by other statutory remedies, she cannot assert them as intentional infliction claims."); *see also Pacheco v. Zanios Foods*, 502 F. Supp. 2d 508, 512 (W.D. Tex. 2006) (Martinez, J.) ("Plaintiff is precluded under Texas law from bringing a claim for intentional infliction of emotional distress against [her supervisor] as the events giving rise to her alleged injuries have other statutory remedies."). The Supreme Court of Texas explains that IIED is a "gap filler" tort that exists only in cases where other remedies are not available to cover the conduct at issue. *See Hoffman–La Roche, Inc., v. Zeltwanger*, 144 S.W.3d 438, 447 (Tex. 2004).[3]

---

[3] While the holding in *Creditwatch* is clear, as the IIED claims against *both* the corporate defendant and individual supervisor were dismissed, it must be observed that this holding represents a significant development in Texas law that the Texas Supreme Court undertook without much discussion or justification. The previous leading case on the subject, *Hoffman–La Roche, Inc., v. Zeltwanger*, 144 S.W.3d 438 (Tex. 2004), only held that the IIED claim was unavailable against the corporate defendant when the underlying facts supported a statutory claim against that same defendant as well. In that case, the court even left a $50,160 IIED judgment

Defendants point out that Muniz is not complaining of two separate courses of conduct on the part of Saldana; instead, the lewd conduct which underpins her claim for IIED is part and parcel of the conduct which underpins her statutory claims. Corp. Defs.' Resp. 4; *see also* Saldana Mot. 4. When specifying the conduct which Muniz considers extreme and outrageous, she claims that Saldana showed her

> provocative sexual pictures, magazines and videos on numerous occasions. These pictures and videos were usually of women having sex with other women. Defendant Saldana would also continually grab his private parts in a sexual manner in front of [Muniz]. Defendant Saldana would also show [Muniz] videos of black men with their penises disclosed and ask [Muniz] how she liked their penis size. In addition, Defendant Saldana also subjected [Muniz] to unwanted and unreciprocated sexual comments.

Pl.'s Mot. ¶ 7.

In the very next paragraph, Muniz characterizes this behavior as "sexual harassment," and claims that Saldana retaliated against her for reporting it. *Id.* ¶ 8. In the following paragraph, Muniz claims that the alleged sexual harassment together with the alleged retaliation caused her "severe emotional distress" and "high blood pressure," causing her to miss work on the advice of her physician. *Id.* ¶ 9. Given this sort of pleading, it is clear that Muniz has not attempted to

---

against the supervisor untouched, though in part because it was not raised on appeal. *Zeltwanger*, 144 S.W.3d at 442. Overall, it is unclear how the logic of *Zeltwanger* necessarily extends to cover the facts in *Creditwatch*. The no-gap-to-fill argument explains why the availability of a statutory remedy against a certain defendant precludes using IIED to sue the *same defendant for the same conduct*. But why the availability of a statutory remedy against one defendant (the corporate employer) should shield a separate defendant (the individual supervisor) from liability – on the only claim available against that individual – remains unclear. While it is true that only a single recovery should be had for a single factual harm, even when multiple theories and multiple defendants are involved, that principle is generally applied only to regulate the judgment and collection stages of a case, not the pleading stage. *See Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 7 (Tex. 1991).

distinguish the conduct which supports the IIED claim from the conduct which supports the statutory workplace claims. Because Muniz is attempting impermissibly to predicate an IIED claim on the same conduct which underpins her statutory claims, the Court concludes that there is no "reasonable basis to predict recovery" on the IIED claim against Saldana, and as such, Saldana's joinder is improper. *Pacheco*, 502 F. Supp. 2d at 512; *see also Boone*, 416 F.3d at 389. Thus, improperly-joined Saldana must be dismissed from the instant suit, and complete diversity exists between properly joined parties. *See Griggs*, 181 F.3d at 698.

      C.     **The Amount In Controversy Requirement Is Met**

Muniz goes on to argue that the amount in controversy in the instant case does not meet the requirements of the diversity jurisdiction statute, requiring a remand to state court. Pl.'s Mot. ¶ 11. Diversity jurisdiction requires that the amount in controversy be in excess of $75,000. *See* 28 U.S.C. § 1332(a). The amount in controversy should be determined with reference to the time the suit is filed. *White v. FCI USA*, 319 F.3d 672, 675 (5th Cir. 2003). Normally, the amount in controversy is determined by reference to the specific amount of damages that a plaintiff alleges in the complaint. *Id.* When a state court plaintiff does not allege a specific amount of damages in the complaint, the federal district court "must first examine the complaint to determine if it facially apparent that the claim exceeds the jurisdictional amount. If it is not thus apparent, the court may rely on summary-judgment-type evidence to ascertain the amount in controversy," and the party invoking federal jurisdiction must prove it by a preponderance of the evidence. *Id.* (internal citations and quotation marks omitted).

Muniz claims that, because she has not specified a numerical damages figure in her Original Petition, it is not "facially apparent" that the amount in controversy is over the $75,000

statutory threshold, and that Defendants must therefore present summary judgment type evidence. Pl.'s Mot. ¶ 11. The Corporate Defendants respond by arguing that the nature of the pleadings in this case, sounding in employment discrimination and sexual harassment, and explicitly seeking punitive damages, meet the "facially apparent" standard. Corp. Defs.' Resp. 7–9. They go on to state that if the Court is not convinced of this, it may examine certain pieces of extrinsic evidence which tend to prove that these types of claims often lead to large judgments that exceed the jurisdictional threshold. Corp. Defs.' Resp. 9; *see also id.* Ex. A (database reports of verdict amounts in previous Texas employment discrimination and sexual harassment cases).

The Court agrees with the Corporate Defendants. Muniz misconstrues the "facially apparent" standard. That standard refers to cases in which, while no number is specified in the complaint, the nature of claims alleged makes it obvious that the value at risk exceeds the threshold. *See White*, 319 F.3d at 675 ("[W]hen a complaint does not allege a specific amount of damages . . . the district court must first examine the complaint to determine whether it is facially apparent that the claims exceed the jurisdictional amount.") (internal citations and quotation marks omitted). The term "facially apparent" does not, as Muniz assumes, narrowly refer only to cases in which an actual numerical amount is specified as to damages. *See id.* Only when a facial examination of the claim still leaves doubt as to whether the amount in controversy exceeds the threshold must summary-judgment-type evidence be offered to sustain diversity jurisdiction. *St. Paul Reinsurance Co. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998).

The Court finds that it is facially apparent that the jurisdictional threshold has been met in this case, as it has done in similar employment discrimination cases. *See, e.g., Burroughs v. Raytheon Technical Svc.*, No. 06-cv-89, 2006 WL 897678 (W.D. Tex. April 4, 2006) (Briones, J.)

(employment discrimination case brought under Texas law).  While Muniz is not seeking back pay or front pay, her claims for compensatory and punitive damages under the Texas anti-discrimination statutes make it clear that there is more than $75,000 at stake in this controversy.  The statute provides that an employer may be liable for up to $300,000 in compensatory and punitive damages for an unlawful employment practice.  TEX. LAB. CODE § 21.2585(d).[4]  Any amount of damages up to this figure may be based entirely on "emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses," as well as punitive considerations.  *Id.*  The lack of certain categories in the pleadings, such as front pay and back pay, does not make the maximum amount any less available under the law, and the claim for multiple forms of relief, including punitive damages, suggests that the Muniz is indeed seeking any possible grounds to maximize her recovery up to the cap, which is well above the jurisdictional threshold.  *See In re 1994 Exxon Chem. Fire*, 558 F.3d 378, 387–88 (5th Cir. 2009).

Moreover, the evidence submitted by Defendants shows that cases like the instant one regularly approach or reach those limits.  Corp. Defs.' Resp. Ex. A.  If Muniz was certain at the time she filed the suit that her recovery would in fact not exceed $75,000, she should have "shown [her] commitment to recovery below the federal threshold" by including the lower figure in a binding stipulation filed with the suit, since she was putting forward the sort of complaint that

---

[4] The $300,000 cap applies to employers with more than 500 employees; lower caps apply to smaller employers.  The Defendants aver in their Response that Columbia Sussex alone has more than 500 employees, making it subject to the highest statutory cap.  Corp. Defs.' Resp. 8 n.4.  Even some of the lower caps, for smaller firms, exceed the jurisdictional threshold.  *See* TEX. LAB. CODE § 21.2585(d)(2)–(4) (establishing that all firms with more than 100 employees are subject to caps of $100,000 or more).

-10-

often *will* exceed, and will be assumed to exceed, the threshold. *See De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1412 (5th Cir. 1995). Because she did not so limit her own claim, in the face of a statute that permits recoveries above the threshold and pleadings which reach for all available grounds of recovery, including punitive damages, it is facially apparent that the amount in controversy is above the $75,000 limit. Moreover, the evidence offered by Defendants, which is not disputed by any counter-evidence, makes it clear that the prospect of awards at this level is no idle threat.

## III. CONCLUSION

Defendants have shown that Saldana was improperly joined in this case, because the IIED claim against him has no prospect of success under Texas law. Defendants have also shown that without his presence there is complete diversity between the parties here. Defendants have also shown that it is facially apparent that the amount in controversy in this case is greater than the jurisdictional threshold of $75,000. Accordingly, Saldana's Motion to Dismiss is **GRANTED**, and Muniz's Motion to Remand is **DENIED**. Defendant Saldana is hereby dismissed from this action.

**SO ORDERED.**

**SIGNED** on this 8th day of December 2009.

_____
KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE