**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| **SYLVIA MUNIZ,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **EP-09-CV-274-KC** |
| | § | |
| **EL PASO MARRIOTT, et al.,** | § | |
| | § | |
| **Defendants**. | § | |

## ORDER

On this day, the Court considered "Defendant's Motion for Summary Judgment" ("Motion"), ECF No. 33. For the reasons set forth herein, the Motion is **GRANTED**.

## I.    BACKGROUND

Plaintiff is a former employee of El Paso Marriott, Columbia Sussex Corporation d/b/a CSC/Columbia Sussex Corporation ("Defendant"). Proposed Undisputed Facts ¶ 1, ECF No. 33-1. Plaintiff began working for Defendant in December 1999 as a room service server, and in 2004, Plaintiff became a room service supervisor where she supervised seven or eight employees. *Id.* In October 2008, Plaintiff became a food and beverage supervisor. *Id.* While a food and beverage supervisor, Plaintiff's manager was Mike Saldana ("Saldana"). *Id.* Plaintiff served under three general managers during her employment with Defendant. *Id.* ¶ 2. The first general manager was Carlos Sanchez, who was followed by Curtis Noe ("Noe"). Noe was succeeded by Orlando Carrasquillo ("Carrasquillo"), who became the general manager of the Marriott hotel in August 2008. *Id.*

Before Plaintiff became a food and beverage supervisor, Plaintiff claims that Saldana

1

sexually harassed her. *Id.* ¶ 3. In December 2007, Saldana showed Plaintiff a picture of a naked man on his computer. *Id.* Plaintiff claims to have reported this incident to Noe, Carrasquillo, and potentially others. *Id.* At a scheduled meeting, Plaintiff informed Carrasquillo that Saldana showed her a pornographic image and that Saldana would "slamm [sic] his middle parts," and "joke around." *Id.* ¶¶ 4-5. In her deposition, Plaintiff alleged that at a banquet in June 2007 or 2008, Saldana obtained a burned bratwurst and told Plaintiff in Spanish, "Look, just the way you like them, big and black." *Id.* ¶ 6.

Plaintiff wrote Carrasquillo a letter stating that she complained to him in August 2008, but that no remedial action had been taken to address Saldana's inappropriate behavior. *Id.* ¶ 7. Plaintiff stated in the letter that she had retained counsel and was seeking legal action. *Id.* After receiving the letter, Carrasquillo contacted Marriott's human resources department. *Id.* ¶ 8. Defendant claims that the Marriott then hired an independent consultant to interview relevant witnesses. *Id.*

Plaintiff claims to have suffered acts of retaliation after lodging complaints to Carrasquillo and the Equal Opportunity Employment Commission. Pl.'s Resp. to Proposed Undisputed Facts and Additional Disputed Issues of Material Facts ¶¶ 34-36, ECF No. 37-1. Plaintiff claims she began having conflicts with her co-workers and her supervisor, Saldana. *Id.* ¶ 34. Plaintiff claims Saldana made her work environment "a living hell" and that Saldana turned her co-workers and associates against her and undercut her authority. *Id.* ¶¶ 34-35. Plaintiff claims she was not permitted to train new associates, which was part of her job responsibility. *Id.* Plaintiff further alleges that an associate told her to be careful with her co-worker Diana Lopez because Ms. Lopez was monitoring Plaintiff closely on behalf of Saldana

and Carrasquillo "since [Plaintiff] did this thing with Mike." *Id.*

Furthermore, Plaintiff alleges that, per Saldana's instructions, associates under her responsibility would ask "Louie" instead of Plaintiff for permission to leave work early; Louie is Saldana's brother who worked as a bartender in the Marriott. *Id.* ¶ 36. Plaintiff states that her car was vandalized in retaliation for filing her complaints of sexual harassment. *Id.* ¶ 37. On one occasion, Plaintiff claimed in her deposition that Saldana yelled at Plaintiff in front of other employees, causing Plaintiff to experience high blood pressure and seek medical treatment at a hospital. *Id.* ¶ 38.

Throughout the incidents described above, Saldana was Plaintiff's manager and exercised supervisory authority over Plaintiff. *Id.* ¶ 40. On April 26, 2010, Plaintiff gave two-weeks notice because, according to Plaintiff, Saldana "was known to be a very vindictive person," Plaintiff believed "the retaliation against her in the workplace was not going to stop," and Plaintiff feared for her and her family's safety. *Id.* ¶¶ 41-42. On May 6, 2010, Plaintiff resigned. *Id.*

On June 22, 2009, Plaintiff filed suit against Defendant in the 210th Judicial District of El Paso County, Texas. Notice of Removal, Pl.'s Original Pet. 1, ECF No. 1. On July 24, 2009, Defendant removed the case to this Court. Notice of Removal 1. On July 16, 2010, Plaintiff filed its first amended complaint. Pl.'s First Am. Compl. 1, ECF No. 28. In that amended complaint, Plaintiff pleaded hostile work environment, retaliation, aiding or abetting discrimination, and sex discrimination on the basis of pregnancy, childbirth, or other related medical condition under Chapter Twenty-One of the Texas Labor Code. Pl.'s First Am. Compl. ¶ 6. On November 15, 2010, Defendant filed the instant Motion.

3

## II.   DISCUSSION

### A.   Standard

Summary judgment is required "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009) (quoting *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (per curiam)). A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Ellison v. Software Spectrum, Inc.*, 85 F.3d 187, 189 (5th Cir. 1996).

"[The] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323; *Wallace v. Tex. Tech. Univ.*, 80 F.3d 1042, 1046-47 (5th Cir. 1996). To show the existence of a genuine dispute, the nonmoving party must support its position with citations to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials[,]" or show "that the materials cited by the movant do not establish the absence . . . of a genuine dispute, or that [the moving party] cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c). The court resolves factual controversies in

4

favor of the nonmoving party; however, factual controversies require more than "conclusory allegations," "unsubstantiated assertions," or "a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). Further, when reviewing the evidence, the court must draw all reasonable inferences in favor of the nonmoving party, and may not make credibility determinations or weigh evidence. *Man Roland, Inc. v. Kreitz Motor Express, Inc.*, 438 F.3d 476, 478-79 (5th Cir. 2006) (citing *Reeves v. Sanderson Plumbing Prods.*, Inc., 530 U.S. 133, 150 (2000)). Thus, the ultimate inquiry in a summary judgment motion is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

### B.      Hostile Work Environment

In the Motion, Defendant first seeks summary judgment on Plaintiff's hostile work environment claim. Defendant argues that the alleged harassment is not sufficiently severe to constitute a claim for hostile work environment because more severe facts have been held not to constitute hostile work environment by the Fifth Circuit. Mot. 3-7. Plaintiff, on the other hand, contends that the alleged harassment altered conditions of her employment by creating an abusive working environment, which is enough to survive summary judgment. Pl.'s Resp. in Opp'n to Def.'s Mot. for Summ. J. 21-26, ECF No. 37.

Chapter Twenty-One of the Texas Labor Code makes it unlawful for an employer to discriminate against an employee with respect to compensation or the terms, conditions, or privileges of employment because of race, color, disability, religion, sex, national origin, or age. Tex. Lab. Code Ann. § 21.051 (West 2011). Sexual harassment is a form of sex discrimination prohibited by the Labor Code. *Green v. Indus. Specialty Contractors, Inc.*, 1 S.W.3d 126, 131

(Tex. App. 1999); *Syndex Corp. v. Dean*, 820 S.W.2d 869, 871 (Tex. App. 1991).  The provisions of Chapter Twenty-One are modeled after Title VII of the Federal Civil Rights Act; therefore, courts properly look to federal precedent for guidance when interpreting the statute. *NME Hosps., Inc. v. Rennels*, 994 S.W.2d 142, 144 (Tex. 1999); *Culwell v. City of Fort Worth*, 468 F.3d 868, 873 n.3 (5th Cir. 2006).

There are two distinct types of sexual harassment: quid pro quo and hostile work environment.  *Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 804 (Tex. 2010).  This case involves sexual harassment based on a hostile work environment.  To make a claim for hostile work environment, a plaintiff must show: (1) she belongs to a protected class; (2) she was subjected to unwelcome harassment; (3) the harassment was based on sex; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment and failed to take adequate remedial action.  *Green*, 1 S.W.3d at 131.  Where, as in this case, the alleged harassment is perpetrated by a supervisor with immediate or successively higher authority, the employee need only satisfy the first four elements set forth above.  *See Watts v. Kroger Co.*, 170 F.3d 505, 509 (5th Cir. 1999).

"To affect a term, condition, or privilege of employment, the harassing conduct 'must be sufficiently severe or pervasive to alter the conditions of [the victim's] employment and create an abusive working environment.'"  *Aryain v. Wal-Mart Stores of Tex., LP*, 534 F.3d 473, 479 (5th Cir. 2008) (quoting *Lauderdale v. Tex. Dep't of Criminal Justice*, 512 F.3d 157, 163 (5th Cir. 2007)).  The work environment must be "both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so."  *Id.*  In determining whether a hostile work environment exists, courts assess the totality of

the circumstances, including: (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with an employee's work performance. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993); *Alaniz v. Zamora-Quezada*, 591 F.3d 761, 771 (5th Cir. 2009). "Central to the court's inquiry into a hostile environment claim is whether the alleged harasser's actions have undermined the victim's workplace competence, discouraged h[er] from remaining on the job, or kept h[er] from advancing in h[er] career." *City of Houston v. Fletcher*, 166 S.W.3d 479, 490 (Tex. App. 2005). Merely offensive conduct, however, is not actionable. *Harris*, 510 U.S. at 21.

In this case, Plaintiff fails to identify sufficient acts that support her claim for hostile work environment. In reviewing the record, the Court concludes that Plaintiff's claim for hostile work environment is based on the following events: (1) Saldana showing Plaintiff a pornographic image of a naked black man on his computer; (2) Saldana "slamm[ing] his middle parts"; and (3) Saldana's statement to Plaintiff, while holding a burned bratwurst, "Look, just the way you like them, big and black." *See* Proposed Undisputed Facts ¶¶ 3, 5, 6.[1] Because it is dispositive, and because the other three requirements are not disputed, the Court addresses the fourth factor

---

[1]    Plaintiff also asserts allegations of general hostility, including Saldana yelling at her in public. Pl.'s Resp. to Proposed Undisputed Facts and Additional Disputed Issues of Material Facts ¶¶ 17-33. However, allegations of general hostility or harassment do not suffice to make a claim for hostile work environment. *See Harris-Childs v. Medco Health Solutions, Inc.*, 169 F. App'x 913, 916 (5th Cir. 2006) (complaint to employer of general harassment not protected activity); *Evans v. Tex. Dep't of Trans.*, 547 F. Supp. 2d 626, 654-55 (E.D. Tex. 2007) (complaint of hostile work environment based on rude behavior of supervisor, with no mention of Title VII-protected characteristic, not protected activity). Therefore, the Court does not address those allegations in greater detail.

required to establish a claim for hostile work environment, namely, whether the harassment affected a term, condition, or privilege of employment.

The facts of this case, in their totality, are not sufficiently severe or pervasive so as to alter the conditions of Plaintiff's employment. Although repulsive and inappropriate, Saldana's alleged conduct toward Plaintiff did not create a hostile work environment according to Fifth Circuit case law. First, though objectionable, the complained of conduct was not frequent. Saldana made the comment involving the bratwurst once, and showed Plaintiff a pornographic image on one occasion. Furthermore, Plaintiff does not allege that Saldana grabbed his middle parts on more than one occasion. Second, Saldana's conduct was not severe, nor was it physically threatening or humiliating to constitute a hostile work environment, especially since there was no touching. *See, e.g., Hale v. Napolitano*, No. SA-08-CV-106-XR, 2009 WL 1507144, at *6 (W.D. Tex. May 28, 2009) (finding no humiliation where alleged harasser "continued to engage in 'filthy, sexist and obscene language and jokes' in the workplace"); *Hancock v. Barron Builders & Mgmt. Co., Inc.*, 523 F. Supp. 2d 571, 576 (S.D. Tex. 2007) (finding no humiliation where alleged harasser made over 100 sexually graphic, vulgar and offensive statements during a nine month period and frequently discussed his personal sex life with the plaintiffs). Rather, Saldana's conduct is offensive. Finally, the conduct did not unreasonably interfere with Plaintiff's work performance, which is the cornerstone of the inquiry. *See City of Houston*, 166 S.W.3d at 490. Indeed, Plaintiff continued to perform her job functions well. In fact, Plaintiff became a food and beverage supervisor after the allegedly harassing conduct began. *See* Proposed Undisputed Facts ¶ 1.

In addition, courts in the Fifth Circuit have found that conduct more egregious than that

alleged here is not so objectively severe or pervasive as to alter the conditions of employment and constitute a hostile work environment.  *See, e.g., Hockman v. Westward Commc'ns, LLC*, 407 F.3d 317, 321-22, 329 (5th Cir. 2004) (defendant's conduct did not alter conditions of employment where plaintiff claimed her immediate supervisor commented on her body and her buttocks, made comments to plaintiff about the bodies of other employees, slapped plaintiff's behind with a newspaper, brushed up against her breasts and behind, attempted to kiss her, asked her to come in early so they could be alone together, and once stood in the doorway of the ladies' room to watch plaintiff wash her hands); *Sheperd v. Comptroller of Pub. Accounts of State of Tex.*, 168 F.3d 871, 872 (5th Cir. 1999) (defendant's conduct did not alter conditions of employment where plaintiff claimed the alleged harasser: (1) made two inappropriate comments on two different occasions "your elbows are the same color as your nipples" and "you have big thighs"; (2) attempted to look down the plaintiff's clothing several times; (3) touched her arm several times, once rubbing his hand from her shoulder down to her wrist; and (4) twice, patted his lap and remarked "here's your seat").

Further, the court in *May v. FedEx Freight Southeast, Inc.*, 649 F. Supp. 2d 451, (M.D. La. 2009), found that defendant's conduct did not alter the conditions of employment where a male coworker allegedly followed the plaintiff to a pet store, grabbed the plaintiff's buttocks in the store, made sexually suggestive remarks about the plaintiff's attire, asked the plaintiff questions about her dating outside of her race, and showed the plaintiff pornographic images at work on one occasion).  *Id.* at 457-59.  Similarly, in *City of San Antonio v. Cancel*, 261 S.W.3d 778, (Tex. App. 2008), a Texas appeals court found no hostile work environment where the alleged victim claimed the defendant repeatedly asked the victim to take his clothes off while

9

gesturing at his pants because such conduct, though "boorish and offensive," does not alter

conditions of employment.  *Id.* at 784-86.  The cases cited above involve conduct far more severe

and pervasive than that alleged here; yet in those cases, the conduct did not, as a matter of law,

alter the conditions of employment so as to make a claim for hostile work environment.

Therefore, the Court find that Plaintiff's claim for hostile work environment fails as a matter of

law and grant summary judgment for Defendant with respect to that claim.

### C.    Retaliation

Defendant next seeks summary judgment on Plaintiff's retaliation claim.  Defendant

argues that Plaintiff's allegations of retaliation are not adverse employment actions, and as such,

do not constitute a claim for retaliation.  Mot. 7-10.  Plaintiff counters that she has suffered a

material, adverse employment action through the abusive environment and eventually leading up

to her alleged constructive discharge..  Pl.'s Resp. in Opp'n to Def.'s Mot. for Summ. J. 26-29.

Chapter Twenty-One of the Texas Labor Code makes it unlawful for an employer to

retaliate against a person who makes or files a charge or files a complaint.  Tex. Lab. Code Ann.

§ 21.055 (West 2011).  In a retaliation case, the plaintiff must first make a prima facie showing

of retaliation.  *Pineda v. United Parcel Serv., Inc.*, 360 F.3d 483, 487 (5th Cir. 2004).  If the

plaintiff can make such a showing, the burden shifts to the defendant to demonstrate a legitimate

nondiscriminatory purpose for the employment action.  *Id.*  If the defendant meets that burden,

then the plaintiff "must prove that the employer's stated reason for the adverse action was merely

a pretext for the real, discriminatory purpose." *Id.* (quoting *Gee v. Principi*, 289 F.3d 342, 345

(5th Cir. 2002)).

To set forth a prima facie claim for retaliation, a plaintiff must show (1) that she is

10

engaged in a protected activity; (2) that an adverse employment action occurred; and (3) that a causal link existed between the protected activity and the adverse action.  *Pineda*, 360 F.3d at 487.  An adverse employment action in the retaliation context is one that "a reasonable employee would have found . . . [to be] materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006).

The adverse employment action must be materially adverse because "it is important to separate significant from trivial harms." *Id.* at 68.  The anti-retaliation provisions do "not set forth 'a general civility code for the American workplace.'" *Id.* (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998)).  The purpose of the objective standard is to "filter out complaints attacking the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing." *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 331 (5th Cir. 2009) (quoting *White*, 548 U.S. at 68).  "An employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience." *White*, 548 U.S. at 68.

Defendant contends that the alleged acts of retaliation do not constitute a material, adverse employment action.  Mot. 7-10.  The Court agrees.  Plaintiff has failed to identify specific acts that support her claim for retaliation.  After reviewing the record, the Court concludes that Plaintiff's retaliation claim is based on: (1) Plaintiff's co-workers ostracizing her after she lodged complaints of harassment; (2) Plaintiff's not being permitted to train new associates, which was part of her job responsibility; (3) Diana Lopez closely monitoring

11

Plaintiff's work after Plaintiff complained of Saldana's conduct; (4) Saldana instructing

employees under Plaintiff's supervision to ask Louie, Saldana's brother, instead of Plaintiff for

permission to leave work early; and (5) damage allegedly done to Plaintiff's car. *See* Pl.'s Resp.

to Proposed Undisputed Facts and Additional Disputed Issues of Material Facts ¶¶ 34-37.  The

Court holds that the complained of conduct would not dissuade a reasonable worker from making

or supporting a charge of discrimination.  Rather, this conduct is precisely the type of petty

slights and minor annoyances properly excluded from protection under anti-retaliation

provisions.  The Court addresses each enumerated allegation purportedly supporting Plaintiff's

retaliation claim in turn.

 First, Plaintiff's claim of ostracism by co-workers is not a materially adverse employment

action that constitutes retaliation.  *See Stewart*, 586 F.3d at 332.  Second, Plaintiff's assertion that

she was not permitted to train new associates certainly does not rise to the level of retaliatory

conduct that would dissuade a reasonable worker from making a charge of discrimination,

especially where Plaintiff retained her position, prestige, and all significant job functions.  *See id.*

at 332-33 (no retaliation where plaintiff was reassigned to a new supervisor and given a heavier

workload because plaintiff's job title, salary, benefits, and duties remained unchanged and there

was no diminution in prestige or change in standing among her co-workers); *see also Aryain*, 534

F.3d at 485 (no retaliation where plaintiff was transferred to a new department with different job

functions because, inter alia, the new position was not more arduous or less prestigious).  For the

same reasons, the Court finds that Saldana's instructing employees under Plaintiff to ask Louie

for permission to leave early instead of Plaintiff is a "petty slight" and a "minor annoyance."

 Furthermore, there is no materially adverse employment action where a plaintiff is

subjected to close scrutiny in the workplace, as Plaintiff claims she was. *See Grice v. FMC Techs. Inc.*, 216 F. App'x 401, 404 (5th Cir. 2007) (holding that an adverse employment action did not occur when the employer (1) watched the plaintiff closely, (2) accused the plaintiff of forgery, (3) falsified an incident report to place blame on the plaintiff, and (4) did not allow the plaintiff to be a step-up lead in the absence of the Lead Assembler).  Thus, Plaintiff's claims of close scrutiny are of no moment.

Finally, Plaintiff's contention that her vehicle was vandalized cannot support her claim for retaliation.  Plaintiff has not offered evidence that Defendant or any agent of Defendant ever touched her vehicle.  Plaintiff claims that her car was vandalized because someone poured soda all over her vehicle.  Pl.'s Resp. to Proposed Undisputed Facts and Additional Disputed Issues of Material Facts Ex. C, at 124:8-10.  However, when asked in a deposition who poured soda on her car, Plaintiff answered, "I wish I knew who it was." *Id.* at 124:11-12.  What's more, Plaintiff admitted that an engineer concluded that the substance on Plaintiff's car was sap, *id.* at 124:13-20, and that others cars contained the same substance on their vehicles. *Id.* at 125:13-19. Plaintiff's speculative assumption that Defendant was the culprit is inadequate to survive summary judgment. *See Little*, 37 F.3d at 1075 (factual controversies necessary to survive summary judgment require more than "conclusory allegations," "unsubstantiated assertions," or "a scintilla of evidence").

In sum, Plaintiff fails to make a prima facie case of retaliation because she cannot show, as a matter of law, that she has suffered an adverse employment action.  As is true with Plaintiff's hostile work environment claim, the cases cited above detail facts more egregious than those involved here, yet those situations were not sufficient to constitute a claim for retaliation.

13

Therefore, the Court grants summary judgment on Plaintiff's retaliation claim.

### D.     Constructive Discharge

Defendant contends that Plaintiff cannot meet the high standard of establishing

constructive discharge, Mot. 10-12, while Plaintiff counters that she can.  Pl.'s Resp. in Opp'n to

Def.'s Mot. for Summ. J. 26-29.  Constructive discharge is properly viewed as an aggravated

case of hostile work environment sexual harassment.  *Pa. State Police v. Suders*, 542 U.S. 129,

146 (2004).  "A plaintiff who advances a constructive discharge claim must show working

conditions so intolerable that a reasonable person would have felt compelled to resign."  *Id.*;

*Brown v. Kinney Shoe Corp.*, 237 F.3d 556, 566 (5th Cir. 2001).  In determining whether a

reasonable person would feel compelled to resign, courts have looked at:

> (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4)
> reassignment to menial or degrading work; (5) reassignment to work under a
> younger supervisor; (6) badgering, harassment, or humiliation by the employer
> calculated to encourage the employee's resignation; or (7) offers of early
> retirement [or continued employment on terms less favorable than the employee's
> former status].

*Brown v. Bunge Corp.*, 207 F.3d 776, 782 (5th Cir. 2000) (alteration in original).

"Discrimination alone, without aggravating factors, is insufficient for a claim of constructive

discharge . . . ."  *Kinney*, 237 F.3d at 566.  "Constructive discharge requires a greater degree of

harassment than that required by a hostile environment claim."  *Haley v. Alliance Compressor*

*LLC*, 391 F.3d 644, 650 (5th Cir. 2004) (quoting *Kinney*, 237 F.3d at 566).

As discussed above, Plaintiff cannot make a claim for hostile work environment.  Since

constructive discharge requires a greater degree of harassment than hostile work environment, it

necessarily follows that Plaintiff cannot make a claim for constructive discharge.  *See id.*

Therefore, summary judgment is appropriate with respect to Plaintiff's claim for constructive

14

discharge.

### E.   Negligence

Defendant claims that Plaintiff's claim for common law negligence is preempted by her harassment claim under Chapter Twenty-One of the Texas Labor Code.  Mot. 12.  Plaintiff essentially concedes this point, stating that "*Waffle House* does not bode well for Plaintiff's common law claims."  Pl.'s Resp. in Opp'n to Def.'s Mot. for Summ. J. 28.  A plaintiff may not recover negligence damages for harassment covered by Chapter Twenty-One of the Texas Labor Code.  *Waffle House*, 313 S.W.3d at 798-99.  Chapter Twenty-One "is preemptive when the complained-of negligence is entwined with the complained-of harassment."  *Id.*  "Where the gravamen of a plaintiff's case is sexual discrimination that lies at the heart of [Chapter Twenty-One], allowing negligence damages for a [Chapter Twenty-One] violation would eclipse the Legislature's prescribed intent."  *Id.*

In this case, the gravamen of Plaintiff's case is hostile work environment, and as such preempts her negligence claim.  Therefore, the Court grants summary judgment with respect to Plaintiff's negligence claim.

### F.   Remaining Claims

Plaintiff pleads aiding or abetting discrimination in violation of Texas Labor Code § 21.056 and sex discrimination on the basis of pregnancy, childbirth, or other related medical condition in violation of Texas Labor Code § 21.106.  Pl.'s First Am. Compl. ¶ 6.  However, Plaintiff has submitted no evidence to support these two claims.  In addition, Plaintiff failed to address these claims in her response to Defendant's Motion.  As such, the Court finds Plaintiff has waived the two claims.  *See Williamson v. Watco Cos., Inc.*, No. 09-1255, 2010 WL

4117745, at *3 (W.D. La. Oct. 13, 2010) ("failure to brief an argument in the district court waives that argument in that court"); *see also Hervey v. Miss. Dep't of Educ.*, No. 3:08cv180-DPJ-JCS, 2010 WL 88901, at *7 (S.D. Miss. Jan. 6, 2010); *Lopez v. River Oaks Imaging & Diagnostic Grp., Inc.*, 542 F. Supp. 2d 653, 658 n.9 (S.D. Tex. 2008) (claim waived where party failed to brief the claim or assert the claim either directly or in response to employer's motion for summary judgment); *Hill v. Sodexho Servs. of Tex., L.P.*, No. A-05-CA-732-LY, 2007 WL 4234261, at *2 n.1 (W.D. Tex. 2007) (finding that the plaintiff waived claims he failed to brief in his response to a motion for summary judgment) (citing *Whitmire v. Terex Telelect, Inc.*, 390 F. Supp. 2d 540, 548 (E.D. Tex. 2005) (the plaintiff waived his claims when he did not raise or brief issues related to those claims in his response to motion for summary judgment)).  Hence, the Court grants summary judgment as to Plaintiff's claims for aiding and abetting discrimination and sex discrimination on the basis of pregnancy, childbirth, or other related medical condition.

## III.    CONCLUSION

Defendant's Motion, ECF No. 33, is **GRANTED**.

**IT IS FURTHER ORDERED** that the Clerk of Court close the case.

**SO ORDERED**.

**SIGNED** on this 25th day of February, 2011.


_____
KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE

16